Good afternoon, Your Honor. May it please the court. I'm Anne Barton for the petitioner Alondra Carranza Moreno. I'd like to reserve two minutes of my time for rebuttal. In this case, the petitioner is stating that the IJ and the BIA erred on finding past persecution. That's the threshold issue in this case that she was a child when her mother was abused continuously from the time that she was involved with her stepfather. And that it ultimately ended with the mother being murdered by her stepfather. So that's the threshold issue. The IJ didn't find that she was, in fact, a victim of past persecution. And that's where I think it needs to be remanded to the BIA and ultimately to the IJ to investigate that further. So I know that the court, you requested that we look at AB1 and AB2 in terms of the standard for unable or unwilling and whether or not that that standard was changed. So do you want to discuss that or how do you want to proceed on that issue? Well, if you were to lose on that issue, then your other issue would be obviated. Is that right? Correct. I mean, we have to establish that the court, I believe, should remand this case to establish that there was past persecution in the case. What about the nexus issue? The BIA didn't address that? The BIA concluded there was no nexus. But they didn't explain why. And in the petitioner's view, there was nexus because she is the member of the family and the abuser, her stepfather, is the one who. That's not the question. The question was whether he would be persecuting her because she was a member of the family. And the difficulty, Scott, is that there are other members of the family within the same social group who have not been persecuted. So just I know you know that. But that's why nexus is in my notes as well. I understand your question on that, but I don't think it was fully developed in the record. I must say that she was pro se. She's barely 18 years old and she's in detention. And, you know, the judge in that case barely, you know, brushed the surface of what happened to her as a child in that situation or the other children. As a matter of fact, I mean, I know that she came across the border with her younger step sibling, but whether or not she was other folks in that in that household were also abused has not been explored. So I'm trying to figure out where the BIA opinion. I see where it decided that the past harm didn't rise to the level of persecution. I understand you're saying that you didn't take into account any. Although at the time of the actual killing, how old was she? Sixteen. But where is it? Where is there a nexus? Well, the nexus is that I'm asking you where there's a nexus. I'm asking you where in the BIA's opinion there's a nexus. Oh, I don't think that they address that. But you said it did. No, I'm sorry. I misquote. No, it didn't. I have a note that it said AR2. Well, AR2 is maybe there's a sentence here, but I'm just missing. I mean, I'm looking at it right now. The law requires that you demonstrated the harm she has suffered. Maybe this is it being in order for her to harm her. All it says is past harm rising to the level of past persecution. They're not talking about nexus. In fact, I think the record is pretty. I guess it's the next sentence. It's a little opaque. All right, go ahead. Keep going, please. So let's go to the question that of the unable or unwilling. I'm sorry, I didn't understand your question. Let's go to the unable or unwilling question. Well, the question about whether or not AB1 and AB2 expand the meaning of unable or unwilling. I think I follow the court in Grace versus Barr opinion. In fact, it is. There's no question that that expanded the culpability of the government to control private actors. But here you have. So even if the I'm not agreeing with you, but suppose we agreed that the AB1 changed the unwilling and unable standard and made it a more stringent standard. Here, let's go to this unable and unwilling. She's out language and nothing else. That's it. That's what she's got to show the government. The Mexican government apprehended at some risk to agents involved her stepfather and then prosecuted him. So it doesn't seem that they were unwilling or unable to do anything to try to protect her. So even if AB1 created a more stringent standard that is more stringent, they apprehended him and prosecuted him. That's not entirely helpless or completely helpless or unable under any definition. I think it's not unwilling or condoning or acquiescing or any definition you want to use. They didn't they just didn't do it. They they took steps to protect her. So even if the legal argument were if that were correct, how can she win under these facts? Well, for one thing, the immigration court didn't find that she met the criteria for past persecution. That's a different issue. We understand that argument. How can she be unable or unwilling? Well, because because she testified in the court that even if she and her mother had gone to the authorities, they wouldn't protect her. That was that was the end. That was the extent. You mean before that? Before the murder? She speculated that they wouldn't protect her, but then they did. So my understanding is that she left, she was hit and she left to live with a grandparent. They didn't protect her mother as her version of events because she was tragically murdered. Right. But the point is, in terms of unable or unwilling, they certainly responded afterwards and apprehended him. And what we understand is that he was in jail for a year. Is that I think the record is pretty clear on that point. The record is on that. I mean, I think I think you have to look at at what happened to this young woman and her mother prior to the murder. That that I think we can agree there was past persecution. I mean, it hasn't I think for you to prevail on this point, it's one thing to say that the jailing him after the murder clearly didn't protect the mother. But do we have any evidence in the record that the mother tried to get help from authorities and and that was ineffective? So, you know, explaining that that's why she was ultimately murdered. We have the daughter testifying that she thinks her mother wouldn't have been able to get help. Is there is there anything else? Well, there is. I think I think that's part of the problem is that the record is pretty scant on that. And the judge didn't ask any more probing questions. I mean, this young woman was pro se, so she didn't have the opportunity to really expand on that. And she came across the border when she was just barely 18 and didn't have much of a chance to to fully develop her case. Since you're out of time, I just want to tell you when you come back, if you could respond for me on Nexus. Yes, I have on our two. It's in the one, two, three, third full paragraph. There's a sentence in the middle of the paragraph that is a little bit opaque, but I interpret it to be a nexus finding. It starts with the law requires for asylum that she demonstrate. That's the sentence that I think is a nexus finding. And so maybe you could respond to that when you come back. Thank you. OK, Mr. Engler. May it please the court, Micah Engler, on behalf of the attorney general of the United States. Your honor, in this case, we were asked to address the issue of whether a B1 changed the existing law regarding the governmental role element for persecution. The government's position is that a B1 did not change or overrule the existing law. And in fact, most courts have agreed that a B1 did not do so even before a B2 explicitly confirmed that view. Before you get into a B, could I just ask you, is there a nexus finding here? The government's position is that that sentence that I believe was referred to as opaque is the nexus finding where it says that the law requires for asylum, that the petitioner demonstrate that the harm she suffered be in order to harm her for a reason that is that is protected under the act. Given that it's talking about that, it has to be protected under the act. That is the nexus finding. And in this case, there isn't a nexus to a protected ground. I mean, it's more than opaque, though. It's just it's weird. It's a statement of the law, but it doesn't say anywhere. And therefore, this is why there was no nexus here. I agree, Your Honor, but it's stated right after the agency is discussing the harm experienced from her stepfather and also the harm that her mother experienced. And then there are two parentheticals from the cases where it's talking about this violence and it's connecting that to a protected ground and saying that none of this harm is connected to a protected ground in this case. And the immigration. Yes, Your Honor. Do you recognize that there is a problem on the persecution issue? Or is there a problem on the persecution issue given the fact that she was very young when all this was happening? I mean, there is case law that children are affected differently with regard to. Violence against relatives and mothers, particularly. Yes, Your Honor. And in this case, that wasn't really fleshed out too well in the record. But it's notable that the petitioner wasn't living at home at the time that her stepfather allegedly murdered her mother. She had moved out of the house and was living with her grandfather at the time. So it's not entirely clear what level of persecution impacted her based on the incidents with her mother. Although she apparently moved out because of her father's violence. Yes, Your Honor, because there was one incident, one isolated incident mentioned in the record involving a petitioner and her stepfather. And after that, she moved out, Your Honor. Yes. But the government's strongest position in this case relates to the unable and unwilling issue. And as Your Honor stated, regardless of the holding in AB1 and AB2 and the discussion surrounding that. No matter what, in this case, petitioner did not demonstrate that the government was unable and unwilling to protect her. Regardless of the specific terms and language we'd like to use for that standard. Nevertheless, the government. Could you back up and explain that a little bit? Because I think opposing counsel's position is that jailing her father after the fact did not protect her mother from the murder. What's the evidence that her mother tried to get help and wasn't able to get help or protection ahead of time? There's no evidence that petitioner or her mother went to the police or government to try to get assistance. In fact, I believe that petitioner testified that they never went to the police to try to get help. There's only one incident in the record wherein somebody went to the police regarding a crime. And that was one. Of course, our case law establishes it's not necessary that she has to go to the police. There could have been a showing of futility. I just want to make sure you're not arguing that the failure to go to the police is a non-starter. Is that your position? No, your honor. I'm arguing the other thing that you said that there's no evidence of futility in the record. In fact, there's evidence that the one time the police were informed about a crime, they investigated the matter. They searched for petitioner's stepfather who was allegedly the person who committed the crime. They found him. They engaged in a shootout with him that ultimately wounded him. They arrested him. They detained him. They tried him for murder and incarcerated him for at least a year. And that's the one incident wherein the police were advised of a crime. That's the only thing that we have in the record. Can I back up? Counsel, forgive me. I know it's hard because there's no visual here. But if I can get in a word edgewise. You said they arrested him. They tried him. They convicted him. Is that all in the record? There's this sort of shadowy suggestion from her that some men went to the judge and he got out after a year. Do we know that he was actually – I think the evidence certainly convinces me that there's evidence he was jailed for a year. Do we know that he was convicted and then released after a year? Do we know those details? Pardon me. I didn't think I said convicted. But if I did say convicted, I did not mean convicted. He was tried for the crime and he was incarcerated for over a year. There is not evidence regarding a conviction. And there's also not evidence regarding his alleged release. We don't really know based on petitioner's testimony what happened with her stepfather. So he could have been acquitted, right? We don't know. We could have been acquitted. Maybe you've answered my question. I think you indicated earlier that he had been tried and convicted. What we know is that he was arrested. There's the shootout that you mentioned. His son was killed. He was wounded. Imprisoned for a year. And then we don't know what happened after the trial, but we know he was released. Is that – have I fairly summarized? Yes, Your Honor. At some point, he was released. And the petitioner testified that after he was released, he vanished. That's the word that she used. And that she never saw him again after that. And the immigration judge asked if she knows if the police are still looking for him, and she stated, I don't know. So we don't know exactly what happened from the record regarding the stepfather. Are you suggesting that he sent her a menacing email or Facebook message or something? Yes, Your Honor. And even that, it's not entirely clear what happened. But it seems from her testimony that she received some sort of friend request on social media from who she thought was her cousin, but she now believes it was her stepfather and that he posted some pictures. But then she signed off and never looked at it again. That's the extent of the interaction she's had with her stepfather since he got arrested by the police during that encounter. How long was she at – go ahead. Forgive me. Go back to the legal question of the unable and unwilling. The board here used both sets of language, right, condoning completely helpless and citing matter of ABA and then their ultimate conclusion was he was unable or unwilling. And it's sort of mysterious because if the standard is unable and unwilling and if it hasn't been changed, then that's the standard. Or why are we looking to some other language? And why does the board look to some other language? I think it's for the same reason. Is anybody claiming those terms are synonymous? They're not synonymous, are they? The government's position, the attorney general's position was that in AB1 and AB2 is that they're interchangeable. They're paraphrases. They're just different articulations. Meaning synonymous is a matter of the English language? Yes, they are interchangeable when it comes to what the standard is for the governmental role element. Well, first of all, that seems demonstrably untrue. I mean, condone and unwilling are not the same because you can be unwilling because somebody has a gun to your head, but that doesn't say you're condoning anything. Doning has a sense of approving. It has a mental state. And helpless and completely helpless and unable aren't the same thing because you can have some tools and abilities and skills, but the other side can be so strong that you're unable, even though you're not helpless. So it's just not the English language to say they're synonymous. I would say that the attorney general was trying to clarify what the terms unable and unwilling, which are themselves somewhat broad and vague terms, how we are using them in the context of the governmental role element and for persecution. That's not to say they're synonymous. It's to say that the condoned and completely helpless is a narrower subset. So if I agree with Judge Berzon's implied statement that these are not synonymous terms, it seems like there's two avenues here. One is by government counsel's argument, my understanding is you think it doesn't matter because she fails on these facts either way. But the other problem I think would be what? Could you just take that through? If we decide that this new attorney general opinion doesn't comply with APA, then what? Well, I guess, Your Honor, I would say that this court should look at how all the other courts, all the other circuit courts, except for the D.C. Circuit, have used the AB1 decision in interpreting what unable and unwilling is and what completely helpless and condoned means in those situations. Well, we have. I mean, I can tell you that my clerk and I have spent considerable time tracing exactly that. So if you could take it as a hypothetical that if we decide that these terms are not synonymous, then what would the next step be? Would we need to have more briefing and consider the APA argument? Do we have what we need in this case to reach that analysis? What's your position, please? My position is that in this case, you don't even need to reach that issue, because even if you just say unable and unwilling, the petitioner has not met that burden in this case. There's something just disconcerting about the notion that they're the same, but you don't need to reach it because it's at least unable and unwilling, which assumes they're different. I mean, so it's strange. Although you may well be right that maybe another way to say it is that on any understanding of unable or unwilling, this meets it. So even if the current standard is narrower, it doesn't matter. In any event, your time is up. We won't give you a minute. Thank you very much. Thank you, Your Honor. Your Honor, I think you wanted me to address the issue of whether or not the BIA looked at nexus in this case or explained their reasons. Yes. And I can't say that they did. I mean, that's kind of opaque. Okay. I just wanted you to look at it. If they did, I think that's where they did it. And your position sounds like it's closer to, as Judge Berzon suggested, this is a statement of the law, but not a statement that there was no nexus. If that's your response, I don't know anywhere else they addressed nexus. So thank you. Is there anything else you want to say about the unable or unwilling? I'm sorry? Is there anything else you want to say about unable or unwilling? I would like to say that I think this was a last ditch effort by the asylum law using conjoined or completely helpless as a phrase to be synonymous with unable or unwilling. But counsel, what if we agree with you? Just quickly, what if we agree with you and decide that unable or unwilling is a lower standard and easier standard to satisfy? Can you give me your best shot for why you think your client satisfies it here? Well, absolutely. I think that she qualifies because the government did not intervene in her or her mother's case before her mother was murdered. They didn't have the opportunity. I mean, they didn't feel that the government would protect them. Are you relying on futility? I think there was no, I mean, there aren't enough, there are not enough facts in the case to actually address that. But I think it should be remanded because the judge didn't ask those questions. There were only a few probative questions of this young woman. And I think the trial probably lasted less than an hour. When she testified on the day of the hearing or on the day of the, how old was she then exactly? Please. 18, 18 years and four months. Thank you. Okay. Thank you very much. The case of Lorenzo Moreno versus Rosen submitted and we'll take a each minute break. This court stands in recess for 10 minutes.
judges: Berzon, Christen, Bade